## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| HERCULES LED, LLC, et al. | ) | CASE NO. 5:25-CV-1099 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | JUDGE CARMEN E. HENDERSON |
| v. | ) | UNITED STATES MAGISTRATE |
| | ) | JUDGE |
| TRAVIS UHL, et. al. | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |

Pending is Defendants Travis Uhl ("Uhl"), Michael Shebeck ("Shebeck"), Jacob Butcher ("Butcher"), Joshua Jablonski ("Jablonski"), Brogan Gearhart ("Gearhart"), J&J Technical Electric Contracting, Inc. ("J&J"), and Norris McQueen ("Norris McQueen") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (collectively "Defendants"). (ECF. No. 15). Plaintiffs, Hercules LED, LLC ("Hercules") and Lumenforce LED, LLC ("Lumenforce"), collectively (the "Plaintiffs), filed a Memorandum in Opposition to Defendants' Motion to Dismiss. (ECF. No. 18.). Defendants filed a reply in support of their Motion to Dismiss. (ECF. No. 19).

### I.      Background

In their Complaint, Plaintiffs, Hercules and Lumenforce, assert claims against all Defendants for (1) Misappropriation of Trade Secrets under the Defend Trade Secrets Act and (2) Tortious Interference with Business Relationships. (ECF. No. 1, at ¶¶ 39, 46). Plaintiffs assert separate breach of contract actions against Defendants, Uhl, Jablonski, and Butcher alleging violations of the non-compete clause in their respective employment agreements, restricting them

1

from competing within one hundred miles from their primary workplace in Butler, Pennsylvania. (ECF. No. 1, at ¶ 52). Plaintiffs also contend that these Defendants violated their agreements by conducting unauthorized solicitations of Plaintiffs' employees and gaining "unauthorized post-termination access to Plaintiffs' proprietary software." *Id.* Moreover, Plaintiffs further assert separate breach of contract actions against Defendants Shebeck and Gearheart for alleged violations of their respective agreements following termination of their employment. (ECF. No. 1, at ¶ 56).

Plaintiffs represent that they are in the business of "selling and installing LED lighting for various customers and aiding said customers in obtaining appropriate utility rebates after governmental incentives and/or other benefits to maximize the economics for customers and obtain energy savings." (ECF. No. 1, at ¶ 15). Both Plaintiffs' businesses were formed under the laws of the State of Ohio, and share an office located at 5411 Market St., Youngstown, Ohio 44512. *Id.* at ¶ 1. Plaintiffs represent that they are separate limited liability companies (LLCs) and that they are "sister companies." (ECF. No. 1, at ¶ 16).  Plaintiffs represent that Hercules was formed over eleven years ago whereas Plaintiff Lumenforce was formed in 2023. (ECF. No. 1, at ¶ 16). Plaintiffs assert that they've acquired, "[s]ignificant technological and regulatory knowledge and extensive business relationships" while operating their business. (ECF. No. 1, at ¶ 15).

Further, Plaintiffs contend that they utilize the following measures to safeguard their "confidential and proprietary information,"

> Plaintiffs engaged in reasonable efforts to preserve the secrets of their confidential and proprietary information by taking steps including, but not limited to, maintaining their sensitive files with restricted access for individual log in and password protection. Plaintiffs restrict access to this information to employees who need to know this information for purposes of accomplishing their job

duties. Further, Plaintiffs use an employee handbook and specific and separate agreements to maintain confidentiality of this competitively sensitive information. The handbooks are attached hereto as Exhibits F through J advising each of the Employee Defendants about their duties to maintain the secrecy of the confidential and proprietary information they obtained through their employment with Plaintiffs. The Employee Defendants also signed covenants not to compete, contact or solicit Plaintiffs' employees, and to both not use and return any proprietary information obtained from Plaintiffs in any way. *See* Exhibits A through H.

(ECF. No. 1, at ¶ 29).

On or around March 31, 2023, Plaintiffs represent that they hired Defendant, Travis Uhl as a subcontractor and then a project manager for Hercules. (ECF. No. 1, at ¶ 18). Plaintiffs represent that, "Uhl had no specialized knowledge or information [concerning] how to evaluate LED projects for energy savings or rebate assessments for sales purposes." *Id.* Plaintiffs allege that they, "provided Uhl substantial training and Uhl was provided access to Plaintiffs' sensitive information including knowledge about various suppliers and distributers and other specialized training to evaluate whole installation jobs for end users and price out the work accordingly reflective of all available rebates and other subsidies available." *Id.*

On February 4, 2020, Plaintiffs represent they hired Defendant, Michael Shebeck, as a salesman for Hercules. (ECF. No. 1, at ¶ 20). Plaintiffs contend that, "[Shebeck] obtained substantial training and was provided access to Plaintiffs' sensitive information including knowledge about various potential customers, suppliers, distributors and other specialized training." *Id.* On or around May 1, 2023, Plaintiffs represent they hired Defendant, Jacob Butcher, as an installer. (ECF. No. 1, at ¶ 20). Plaintiffs contend that Butcher, "obtained substantial training and was provided access to Plaintiffs' sensitive information including knowledge about various suppliers and distributers and other specialized training." *Id.* Plaintiffs

also hired Defendants, Brogan Gearhart and Joshua Jablonski. (ECF. No. 1, at ¶¶ 25-27). Plaintiffs contend that both Defendants received access to "confidential and proprietary information and customer, distributer, and supplier relationships." (ECF. No. 1, at ¶¶ 25-27).

Plaintiffs allege that each of these aforementioned Defendants violated their respective agreements in the following manner,

> Competing with Plaintiffs within the restricted zone by working for J & J and doing LED installations and/or working for Norris McQueen in a similar business. Due to Defendants' efforts, the Brookville School job is a clear violation as the Brookville School District is within the one hundred (100) mile radius of Plaintiffs' offices at the time and several customers. Both of these Defendants are within the restricted time frame set forth in their respective agreements. Additional violations include solicitation of Plaintiffs' employees. The full extent of these violations is yet to be discovered.

(ECF. No. 1, at ¶ 56).

Additionally, Plaintiffs assert that following Defendant Uhl's resignation from Hercules around February 16, 2024, Plaintiffs sent a letter "reminding him of the restricted covenants and restrictions upon his actions following his resignation." (ECF. No. 1, at ¶ 30). However, Plaintiffs represent in violation of "[Defendant's] restricted covenants," Defendant Uhl now owns a competing LED installation company named J&J. *Id.* Moreover, Plaintiffs contend that, "Uhl has managed to solicit Defendants Jablonski and Butcher to join him at J&J… [i]t is also believed that Uhl solicited and has partnered with Defendant Shebeck to form the company Norris McQueen which is soliciting Plaintiffs' current and perspective customers to bid for installation projects." (ECF. No. 1, at ¶¶ 31-32).

Moreover, Plaintiffs assert that Defendant Uhl continued to access unauthorized data post- resignation,

> Uhl, has somehow accessed Plaintiffs' Monday.com account post
> termination and has thus intentionally accessed Plaintiffs'
> confidential information about its workflows, projects, contacts,
> and complete customer list with no legitimate purpose and for the
> express purpose of using it to compete with Plaintiffs. Importantly,
> Plaintiffs' had changed the password and transferred the account
> following Uhl's termination, and while it is unclear how he
> regained access, logs prove he accessed the account after his
> termination and any such access was done under false pretenses
> and with only negative motives.

(ECF. No. 1, at ¶ 32).

Furthermore, Plaintiffs represent that, "subsequent to the departures of the Employee Defendants these Defendants have all been utilizing the proprietary and confidential information of Plaintiffs to directly compete against Plaintiffs in violation of their respective Agreements and they continue to improperly solicit employees, customers, and/or potential customers of Plaintiffs within restricted areas during the restricted timeframes of their covenants." (ECF. No. 1, at ¶ 35).

Finally, Plaintiffs seek the following relief:

  a. A temporary restraining order, preliminary injunction and permanent injunction ordering Defendants to return all Plaintiffs' proprietary information including its confidential proprietary information;
  b. A temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from utilizing Plaintiff's confidential proprietary information;
  c. A temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from reviewing the contents of any of Plaintiffs' confidential and proprietary information in the marketplace;
  d. A temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from interfering with Plaintiffs' business relationships;
  e. A temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from violating the terms and conditions of their respective Agreements, including, but not limited to competing with Plaintiffs within the restricted time

and geographic limitations in the Agreements, and soliciting any of Hercules' employees or customers or prospective customers;

f. Damages and/or punitive damages in excess of Seventy Five Thousand Dollars ($75,000.00) for those damages which are compensable under all counts;

g. Attorney's fees and costs; and

h. Such other relief as the Court deems just and fair.

(ECF. No. 1 at 18).

This Court grants in part Defendants' Motion to Dismiss for the reasons discussed below.

## II.        Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). Dismissal of the action is proper if Plaintiff "undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Progressive Northern Ins.*

*Co. v. City of Rocky River, No.* 1:18CV0524, 2019 WL 5394206, at *3 (N.D. Ohio Aug. 16, 2019) (internal quotation marks and citations omitted).

### III.    Law and Analysis

### A.  The Trade Secret Claim

"Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984). "A trade secret derives its value from its secrecy. It stands to reason, therefore, that disclosure can extinguish a trade secret and the owner's rights therein." *Houser v. Feldman*, 569 F. Supp. 3d 216, 226-27 (E.D. Pa. 2021) (quotations and citations omitted); *Health Care Facilities Partners, LLC v. Diamond*, No. 5:21-CV-1070, 2023 U.S. Dist. LEXIS 97611, at *11 (N.D. Ohio June 5, 2023).

### 1.  The Federal DTSA

Plaintiffs brought a claim against all Defendants alleging Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA") in Count One of the Complaint. (ECF. No. 1 at 18). "An owner of a trade secret that is misappropriated may bring a civil action under [the DTSA] if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also B&P Littleford, LLC v. Prescott Mach., LLC*, No. 20-1449, 2021 U.S. App. LEXIS 25590, 2021 WL 3732313, at *5 (6th Cir. Aug. 24, 2021).

Congress set forth how information becomes a trade secret and who may enforce that under the DTSA:

> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —
>
>> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>>
>> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;
>
> (4) the term "owner", with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed.

18 U.S.C. § 1839. "To prevail on such a claim, a plaintiff must accordingly establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023); *Noco Co. v. CTEK, Inc.*, No. 1:19-CV-00853, 2020 WL 821485, at *6 (N.D. Ohio Feb. 18, 2020).

"And, of course, each of those elements is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380-81 (3d Cir. 2021). "A plaintiff is required to identify a trade secret with specificity to separate the secret from general knowledge," *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021), and "define the information for which protection is sought with sufficient definiteness," *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380-81 (6th Cir. 2022).

8

On a motion to dismiss, courts generally find "so long as the plaintiff can put forth general categories of its trade secrets and provide the type of factual allegations . . . that allow for the reasonable inference that the defendants improperly disclosed some of those trade secrets . . . the plaintiff has done all that is required to survive a motion to dismiss." *C.R.H. Indus. Water, LLC v. Eiermann*, No. 1:23-cv-01805, 2024 U.S. Dist. LEXIS 211678, at *9 (N.D. Ohio Nov. 21, 2024); *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F.Supp.3d 702, 714 (N.D. Ohio 2021) (quotations and citations omitted).

### 2. Plaintiffs Sufficiently Established Ownership under the DTSA.

"Ownership is central to the DTSA [and] an essential element of a DTSA claim." *Health Care Facilities* at *17, citing *Focused Impressions, Inc. v. Sourcing Grp., LLC*, No. 19-CV-11307, 2020 U.S. Dist. LEXIS 67328, 2020 WL 1892062, at *4 (D. Mass. Apr. 16, 2020) (collecting authorities). "To state a DTSA claim, a plaintiff must show that he is the owner or licensee of the alleged trade secret." *Lamont v. Krane*, No. 5:18-CV-04327, 2019 U.S. Dist. LEXIS 81451, 2019 WL 2113903, at *3 (N.D. Cal. May 14, 2019); *see also Houser*, 569 F. Supp. 3d at 228-29; 18 U.S.C. §§ 1836(b)(1) and 1839(4).

In their Motion to Dismiss, Defendants argue that "[t]he Complaint was filed by two separate Plaintiffs; each a separate and distinct entity under Ohio law . . .  [t]he Complaint fails to state a claim upon which relief may be granted because the Plaintiffs have not specifically identified which Plaintiff has standing to recover for which alleged misappropriation from which Defendant." (ECF. No. 15 at 11). However, "[t]he language of the DTSA limits standing to only owners and licensees." *Phyllis Schlafly Revocable Tr. v. Cori*, No. 4:16-CV-01631, 2022 WL 898760, at *2 (E.D. Mo. Mar. 28, 2022). To satisfy the injury-in-fact requirement for standing, the harm complained of "must be both 'concrete and particularized,' meaning 'that the injury

must affect the plaintiff in a personal and individual way.'" *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 & n.1 (1992)); *see also Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018).

> In their Complaint, Plaintiffs explained:
>
>> Lumenforce is a sister company to Hercules. From the beginning, over eleven (11) years ago, Hercules and subsequently Lumenforce, which was formed two years ago, have grown into a significant regional operation performing significant operations in Ohio, Pennsylvania, Indiana, New York and New Jersey. Over that time and throughout its growth. Hercules has developed its own specialized processes and techniques for how to work with various governmental programs and utility companies. Similar expertise and specialized processes have been developed to calculate potential savings and rebates and educate potential customers and ultimately make sales for said customers in a manner that best allows for customers to upgrade their electrical lighting needs in an economical fashion, while attaining significant energy savings.

(ECF. No. 1, at ¶ 16). The Complaint adequately addressed the nature of the Plaintiffs' business relationship as well as their joint interest in guarding the trade secrets. Thus, the Complaint sufficiently indicated trade secret ownership for both Plaintiffs.

### 3.  Plaintiffs Sufficiently Established the Existence of a Trade Secret

As stated above, "[t]o prevail on such a claim, a plaintiff must accordingly establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023); *Noco Co. v. CTEK, Inc.*, No. 1:19-CV-00853, 2020 U.S. Dist. LEXIS 27237, 2020 WL 821485, at *6 (N.D. Ohio Feb. 18, 2020).

Regarding the first element, Defendants assert the following in their motion to dismiss:

10

> Plaintiff[s] provide[] merely vague allegations of fact to support that trade secrets exist. For example, in paragraph 16 of the Complaint, the Plaintiffs merely recite that Plaintiff Hercules has "developed its own specialized processes and techniques for how to work with various governmental programs and utility companies." *See*, Complaint, ¶ 16. Even more vague is the next reference that these 'specialized processes have been developed to calculate potential savings and rebates ... (citation omitted)' It is insufficient to merely describe abstract categories of trade secrets.

(ECF. No. 15 at 13).

Plaintiffs disagree and cite Paragraph 17 of the Complaint, which alleges:

> In their Complaint, Plaintiffs state that they developed specialized processes and techniques to work with governmental programs and utility companies and to calculate potential savings and rebates and educate potential customers as well as developed an extensive system of suppliers, distributers, and other business relationships, and developed a method for finding new customers within their regions of operations.

(ECF. No. 18 at 10-11). The Court finds this allegation is sufficient at this stage. Defendants argue this allegation is vague. It is true some categories listed above may strain the definition of trade secret. But on a motion to dismiss, "various federal courts have agreed that plaintiffs' pleadings need not disclose in detail trade secrets that have been misappropriated." *C.R.H. Indus. Water, LLC v. Eiermann*, No. 1:23-cv-01805, 2024 U.S. Dist. LEXIS 211678, at *10 (N.D. Ohio Nov. 21, 2024) (finding allegations of "customer information, prospective customer information, pricing structures, rate calculations/information," sufficient to state a claim). These allegations sufficiently put Defendants on notice what categories of information in Plaintiffs claim is a trade secret. Plaintiffs will have to prove through discovery, with more specificity, this information qualifies as a trade secret.

Moreover, another court in this district addressed a similar issue in *R.J. Heating Co. v. Rust*. No. 1:22-cv-00710, 2024 U.S. Dist. LEXIS 54446, at *7 (N.D. Ohio Mar. 27, 2024). In *R.J.*

*Heating Co.*, Plaintiffs asserted claims under the DTSA, "alleg[ing] that Defendants [Former Employees] used its information and vendor/supplier contacts and relationships to obtain favorable pricing and authorization to sell product lines on behalf of [Defendants]." *R.J. Heating Co.*, U.S. Dist. LEXIS 54446, at *7. The *R.J. Heating Co.* Court held that Plaintiffs did not establish from this contention alone "what information regarding the vendor/supplier contacts and relationships are, in fact, trade secrets." *Id.* In the present matter, Plaintiffs identified specific software, specialized processes and techniques, and customers. (ECF. No. 1, at ¶¶ 16, 17, 36). Plaintiffs also identified a specific customer contacted first by Plaintiffs and later by Defendants, "records reflect that Brookville School District was contacted by Plaintiffs in October of 2023 when Uhl and Shebeck would have been employees of Plaintiffs." (ECF. No. 1, at ¶ 33). Thus, Plaintiffs provided sufficient information regarding their trade secrets under the DTSA.

Moreover, pursuant to 18 U.S.C. § 1839(3)(A), "to qualify as a trade secret, Plaintiffs must have taken reasonable measures to maintain the secrecy of information, which garnered independent value by virtue of not being generally known or readily ascertainable by someone else who could obtain economic value from disclosure or use of the information." *See Health Care Facilities Partners, LLC,* U.S. Dist. LEXIS 97611, at *21 (quoting 18 U.S.C. § 1839(3)(A)). A plaintiff "bears the burden of showing that the information at issue actually [is] a trade secret, which requires showing that it 'is valuable, not known to others who might profit by its use, and has been handled by means reasonably designed to maintain secrecy.'" *Kuryakyn Holdings, LLC v. Ciro*, LLC, 242 F. Supp. 3d 789, 798 (W.D. Wis. 2017) (*quoting IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)). A trade secret plaintiff's failure to show independent economic value generally means that the information is not, as a matter of law, a trade secret. *E.g., Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247,

258 (S.D.N.Y. 2013), aff'd, 572 F. App'x 19 (2d Cir. 2014); *Health Care Facilities Partners,*

*LLC v. Diamond*, 2023 U.S. Dist. LEXIS 97611, at *22.

Plaintiffs allege that they have instituted various measures to safeguard their proprietary

information:

> Plaintiffs engaged in reasonable efforts to preserve the secrets of their
> confidential and proprietary information by taking steps including,
> but not limited to, maintaining their sensitive files with restricted
> access for individual log in and password protection. Plaintiffs restrict
> access to this information to employees who need to know this
> information for purposes of accomplishing their job duties. Further,
> Plaintiffs use an employee handbook and specific and separate
> agreements to maintain confidentiality of this competitively sensitive
> information. The handbooks are attached hereto as Exhibits F through
> J advising each of the Employee Defendants about their duties to
> maintain the secrecy of the confidential and proprietary
> information they obtained through their employment with Plaintiffs.
> The Employee Defendants also signed covenants not to compete
> contact or solicit Plaintiffs' employees, and to both not use and return
> any proprietary information obtained from Plaintiffs in any way. *See*
> Exhibits A through H.

(ECF. No. 1, at ¶ 29).  Defendant's motion is silent on this issue. However, Plaintiffs'

Complaint further detailed that the exposure of said information, "would jeopardize the ability of

Plaintiffs to provide their services and could cause Plaintiffs to lose their economic edge" and

"this confidential information is not publicly known [,] and Plaintiffs maintain their

confidentiality to give it a substantial advantage over competitors." (ECF. No. 1, at ¶¶ 27-28).

Thus, Plaintiffs met their burden in establishing that the trade secrets are both reasonably secured

and have independent economic value pursuant to the DTSA.

### 4. Plaintiffs Sufficiently Plead the Misappropriation Element under the DTSA.

Pursuant to 18 U.S.C. § 1839(5), Misappropriation is the improper acquisition or improper

disclosure or use of trade secrets. At the motion to dismiss stage, "[d]ismissal is appropriate where a

plaintiff fails to articulate a theory of trade misappropriation and makes only 'naked assertions'

devoid of 'factual enhancement.'" *Corp. Bertec v. Sparta Software Corp.*, No. 19-cv-4623, 2020 U.S. Dist. LEXIS 78437, 2020 WL 2112162, at *24 (S.D. Ohio May 4, 2020) (quoting *Exal Corp. v. Roeslein & Assocs.*, 12-cv-1830, 2013 U.S. Dist. LEXIS 180712, 2013 WL 6843022, at *15 (N.D. Ohio Dec. 27, 2013)).

Next, Defendants do not directly address the Complaint's Misappropriation allegations and instead target "that two of the allegations of the alleged misappropriation of trade secrets under the DTSA are based upon 'information and belief.'" (ECF. Doc. 15 at 11). First, allegations based upon 'information and belief' are not improper at this stage of the proceedings. *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d 2019) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and are even "a practical necessity."). In the Sixth Circuit, "pleading on information and belief is allowed 'where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Novus Grp., LLC v. Prudential Fin., Inc.*, No. 19-cv-208, 2019 U.S. Dist. LEXIS 161270, 2019 WL 4452708, at *23 (S.D. Ohio Sept. 17, 2019) (quoting *Starkey v. JPMorgan Chase Bank*, NA, 573 F. App'x 444, 447-48 (6th Cir. 2014)). The allegations made upon information and belief relate to matters within the exclusive possession of Defendants or are allegations which are based on sufficient factual information that make the allegations plausible.

Moreover, Plaintiffs allege a theory of misappropriation through unauthorized acquisition and use. (ECF. Doc. 15 at 11). The Complaint alleges Defendants accessed trade secrets while Hercules employees, took with them those trade secrets when they left Hercules, gained unauthorized access to Hercules' online systems, and are using them to compete against Hercules. (ECF. Doc. 1 at ¶¶ 30-37). Thus, the Complaint sufficiently alleges a theory of

14

misappropriation. Yet, Defendants argue that "Plaintiff's ignore the possibility that this job was obtained because the customer sought out the Defendants and that no trade secrets were misappropriated or used to obtain this project." (ECF. Doc. 15 at 11). The Court finds this argument without merit at this stage. On a motion to dismiss, the Court cannot weigh possible scenarios. Instead, it must take the allegations in the complaint as true and ask whether those allegations state a plausible claim. The Complaint sufficiently pleads allegations that Defendants used misappropriated trade secrets to unfairly compete. *See C.R.H. Indus. Water, LLC v. Eiermann*, U.S. Dist. LEXIS 211678, at *12 (N.D. Ohio Nov. 21, 2024) (dismissing Defendants' argument asking the court to weigh alternative scenarios on Motion to Dismiss); *see also Pres. Partners, Inc. v. Sawmill Park Props., LLC*, 2022 U.S. Dist. LEXIS 237659, at *9 n.2 (S.D. Ohio Oct. 12, 2022) (dismissing claim where complaint only pleaded a "possible" claim, not a "plausible" one).

**5. Plaintiffs Sufficiently Plead the Interstate or Foreign Commerce Element under the DTSA.**

Finally, to bring a claim under the DTSA, the Plaintiff must allege "that [the trade secret] is related to a product or service used in, or intended for use in, interstate or foreign commerce." *C.R.H. Indus. Water,* 2024 U.S. Dist. LEXIS 211678, at *7. According to the Complaint, the Plaintiffs are "Limited Liability Companies under the laws of the State of Ohio." (ECF. Doc. 1 at ¶ 1). Defendant Norris McQueen is a "Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania." (ECF. Doc. 1 at ¶ 7). Defendant J&J, is, "upon information and belief, a Pennsylvania Corporation." (ECF. Doc. 1 at ¶ 8). Finally, Defendants Jablonski, Shebeck, Gearhart, and Uhl reside in the Commonwealth of Pennsylvania and worked for Plaintiffs in the state of Ohio. (ECF. Doc. 1 at ¶¶ 2-8). Thus, the products and services at

15

issue concern interstate commerce. Therefore, this Court denies Defendants motion to dismiss Count One as Plaintiffs have sufficiently pled the trade secret claim under the DTSA.

### B. Plaintiffs did not Sufficiently Plead a Tortious Interference with Business Relationships Claim.

Under Ohio Law, the tort of interference with business relationship is established when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another. *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 2002-Ohio-3932, ¶ 1, 148 Ohio App. 3d 596, 598, 774 N.E.2d 775, 776. Moreover, the elements of tortious interference with a business relationship require: "(1) a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *N. Chem. Blending Corp., Inc. v. Strib Indus., Inc.,* No. 105911, 2018-Ohio-3364, 2018 WL 4043487, at *6 (Ohio Ct. App. 8th Dist. Aug. 23, 2018). Put simply, "[t]ortious interference with a business relation occurs when 'a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another.'" *Id.* at *7 (quoting Castle *Hill Holdings, LLC v. Al Hut, Inc.*, No. 86442, 2006-Ohio-1353, 2006 WL 726911, at *6 (Ohio Ct. App. 8th Dist. Mar. 23, 2006)).

A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim. *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010). Accordingly, dismissal of a claim for tortious interference with business relationships is appropriate "[a]bsent *some factual allegation* that [the defendant's] actions ended or prevented a business relationship." *Id.* (emphasis added).

16

Defendants contend that Plaintiffs' Complaint fails to allege "that they lost a prospective customer as a result of any alleged tortious interference taken by the Defendants. The only reference to this element is another vague and conclusory allegation that J&J and Norris McQueen are attempting to contact Plaintiff's 'existing customers.'" (ECF. Doc. 15 at 16).

Plaintiffs respond by relying on Paragraph 33 of the Complaint:

> the public record reflects that Norris McQueen had obtained a contract for LED replacement for the Brookville School District. This district was a target of Plaintiffs during the time the Employee Defendants were employed with Plaintiffs. Indeed, records reflect that Brookville School District was contacted by Plaintiffs in October of 2023 when Uhl and Shebeck would have been employees of Plaintiffs.

(ECF. Doc. 1 at ¶ 33). Courts in this Circuit hold when plaintiff fails to identify any specific business relationships with which defendant interfered, the claim may be dismissed. *e,g BCG Masonic Cleveland, LLC v. Live Nation Entm't, Inc*., 570 F. Supp. 3d 552, 559 (N.D. Ohio 2021) (dismissing plaintiff's Claim for Tortious Interference as plaintiff "identifies no musical acts, bands, or tours that defendant prevented plaintiff from booking"); *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (affirming dismissal of plaintiff's claim when the plaintiff failed to allege that "any individuals terminated, or decided not to enter into, relationships with him as a result of [the defendant's] actions"); *Richardson v. CVS Caremark Corp.*, No. 1:18 CV 1308, 2018 WL 4189522, at *3 (N.D. Ohio Aug. 31, 2018) (granting motion to dismiss where "Plaintiffs allege[d] no specific instances in which patients ended or chose not to enter into a business relationship with Plaintiffs as a result of the statements and ma[de] only conclusory statements regarding damages").

Here, the Court finds that Plaintiffs fail to allege a specific business relationship with which Defendants interfered. Plaintiffs vaguely alleged in their complaint,

17

> the public record reflects that Norris McQueen had obtained a
> contract for LED replacement for the Brookville School District.
> This district was a target of Plaintiffs during the time the Employee
> Defendants were employed with Plaintiffs. Indeed, records reflect
> that Brookville School District was contacted by Plaintiffs in
> October of 2023 when Uhl and Shebeck would have been
> employees of Plaintiffs.

(ECF. Doc. 1 at ¶ 33). Plaintiffs do not adequately assert the "wrongdoer's intentional

and improper action taken to prevent a contract formation, procure a contractual breach, or

terminate a business relationship." *N. Chem. Blending Corp., Inc.,* 2018 WL 4043487, at *6.

Plaintiffs thinly assert a causal relationship between their past contact with Brookville School

District and Defendants later obtaining a contract with the school. Yet, this vague assertion fails

to meet the plausible pleading standard as "[c]laims set forth in a complaint must be plausible,

rather than conceivable." *Twombly*, 550 U.S. at 570. The factual allegations in the complaint

"must contain something more . . . than . . . a statement of facts that merely creates a suspicion

[of] a legally cognizable right of action." *Id.* at 555. While Plaintiffs provide a conclusory

accusation that Defendants poached the Brookville School District from Plaintiffs, Plaintiff's fail

to make such an assertion in the Complaint. (ECF. Doc. 1 at ¶ 33). Rather in Count 2, Plaintiffs

merely contend that "Defendants have and are continuing to knowingly, maliciously, willfully

and intentionally interfere with Plaintiffs' business, contractual and employment relationships."

(ECF. Doc. 1 at ¶ 48). Yet, Plaintiffs do not name the Brookville School District Project and do

not provide specific business relationships with which Defendants interfered. (ECF. Doc. 1 at ¶¶

45-50). The Court notes that Plaintiffs plead that "Norris McQueen had obtained a contract for

LED replacement for the Brookville School District" in the factual allegations section of the

Complaint. (ECF. Doc. 1 at ¶ 33). Nevertheless, this too does not "adequately assert the

"[Defendants'] intentional and improper action taken to prevent a contract formation, procure a

contractual breach, or terminate a business relationship." (ECF. Doc. 1 at ¶ 48). Specifically,

Plaintiffs fail to assert what intentional and improper actions Defendants allegedly took to

prevent Brookville School District from entering into a contract with Plaintiffs or to induce them

to enter into a contract with Defendants. Thus, Plaintiffs' tortious interference with business

relationships claim fails and this Court grants the Defendant's motion to dismiss on Count Two.

### C.  Plaintiff Lumenforce, may not assert a Breach of Contract Action against Defendants Uhl, Jablonski, and Butcher.

Finally, the moving Defendants allege that "some of the contracts attached to the Complaint

are not executed by Lumenforce and, accordingly, Lumenforce does not have standing to assert

claims for breach." (ECF. Doc. 15 at 20). They request dismissal of Count Three, Breach of

Contract against Uhl, Jablonski, and Butcher brought by Lumenforce. *Id.* Notably, Defendants

did not challenge Count Four of the Complaint, wherein both Plaintiffs assert Breach of Contract

against Defendants Shebeck and Gearhart. *Id.*

To state a breach of contract claim, "Plaintiff must, at a minimum, allege that Defendants

were parties to the contract and that Defendants breached the contract." *Aragonite Capital*

*Markets, LLC v. Dark Horse Media, LLC*, 2023 U.S. Dist. LEXIS 53193, *4 (N.D. Ohio Mar. 28,

2023). Moreover, "the interpretation of written contract terms, including the determination of

whether those terms are ambiguous, is a matter of law for initial determination by the

court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). "If the agreement's text

is unambiguous, our interpretive task also ends with the text, and we apply the agreement as

written." *Diamond Transp. Logistics, Inc. v. Kroger Co.*, 101 F.4th 458, 462 (6th Cir.

2024) (quoting *City of St. Marys v. Auglaize Cnty. Bd. of Commrs.*, 115 Ohio St. 3d 387, 875

N.E.2d 561, 566 (2007)). "Where the terms in an existing contract are clear and unambiguous,

this court cannot in effect create a new contract by finding an intent not expressed in the clear

language employed by the parties." *Savedoff v. Access Group, Inc.*, 524 F. 3d at 763

(quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241 (1978)).

However, if the contract is silent, as opposed to ambiguous, with respect to a particular

matter, "it is not the function of courts in Ohio to formulate a new contract for the

parties." *See Statler Arms, Inc. v. APCOA, Inc.,* 92 Ohio Misc. 2d 45, (1997) ("The fact that a

contract ... is silent on a particular point does not make it ambiguous."); *See also Fultz &

Thatcher v. Burrows Group Corp.,* No. CA2005–11–126, 2006 WL 3833971, at *6 (Ohio Ct.

App. Dec. 28, 2006) (unpublished) (citing *Aultman Hosp. Ass'n v. Comm. Mut. Ins. Co.,* 46 Ohio

St.3d 51, 544 N.E.2d 920, 924 (1989)). On the other hand, silence on a particular point or the

total absence of a provision from a contract or lease is evidence of an intention of the parties to

exclude this item from the contract or lease, rather than evidence of an intention to include

it. *Buckeye Union Ins. Co. v. Consol. Stores Corp.,* 68 Ohio App.3d 19, 25 (10th Dist. 1990).

Plaintiffs rely upon *Aragonite Capital Markets, LLC v. Dark Horse Media, LLC*, contending

that "[t]he matter at hand is nearly identical to the foregoing case." (ECF. Doc. 18 at 28). This

Court does not agree with this contention. In *Aragonite Capital Markets*, plaintiff, Aragonite

Capital Markets, LLC, brought an action for breach of contract and recovery of attorney's fees

against defendant, Cenic Media. *Id.* at *1. Defendant filed a motion to dismiss arguing that they

were "not a party to the alleged agreement and thus, could not have breached it." *Id.* Plaintiff

opposed the motion to dismiss arguing that the contract contains the language*,* "Dark Horse

Media (together with any present and future subsidiaries and affiliates of Dark Horse Media or

Shanghai Cenic Media Co., Ltd., the 'Company')." *Id.* The Court held that this language bound,

Cenic, Dark Horse Media's affiliate, to the contract. *Id.* In this case, the parties' contract

contained the following language, "You will not, for a period of two years following your

20

departure from HERCULES LED for whatever reason, contact, interfere with, solicit on behalf of another, accept business from, or attempt to entice away from the HERCULES LED (or any affiliate or subsidiary of the HERCULES LED) ... " (ECF. Doc. 1-3 at 1) (ECF. Doc. 1-5 at 1) (ECF. Doc. 1-6 at 1).

Unlike the contract in *Aragonite Capital Markets, LLC*, the contractual provision at issue does not state whether present or future subsidiaries or affiliates are included parties in the contract. (ECF. Doc. 1-3 at 1) (ECF. Doc. 1-5 at 1) (ECF. Doc. 1-6 at 1). The express language of the contracts allows for an inference that it must cover present affiliates or subsidiaries, yet the contract is silent regarding whether it also applies to future subsidiaries. (ECF. Doc. 1 at ¶ 16). Importantly, Plaintiffs acknowledge that Lumenforce was not in existence when Defendants Uhl, Jablonski, and Butcher signed their respective contracts. (ECF. Doc. 18 at 19). Moreover, Plaintiffs acknowledge that "each of their contracts do not make specific reference to Lumenforce nor were they executed by Lumenforce." *Id.* Furthermore, Plaintiffs concede that the contested contracts make no mention of whether the affiliates need to be "then existing." *Id.*

Thus, applying the contract provision as written, Lumenforce may not assert a breach of contract claim against the Defendants. Lumenforce was not a party to the contract. (ECF. Doc. 1-3 at 1) (ECF. Doc. 1-5 at 1) (ECF. Doc. 1-6 at 1). Nor was Lumenforce named in the contract or an affiliate of Hercules at the time the contract was executed. *Id.* This Court will not "formulate a new contract for the parties" due to the contract's silence regarding Lumenforce. *See Statler Arms, Inc.,* 92 Ohio Misc. 2d at 54. Therefore, this Court grants the Defendants' motion to dismiss on Count Three, Breach of Contract as it applies to Plaintiff Lumenforce. Lumenforce may not assert a breach of contract action against Defendants Uhl, Jablonski, and Butcher.

### IV.    Conclusion

In sum, Defendants 12(b)6) motion to dismiss is granted in part and denied in part.

Defendants' motion is denied on Count One as Plaintiffs sufficiently plead Misappropriation of

Trade Secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").

Defendants' motion is granted as to Count Two as Plaintiffs do not sufficiently plead Tortious

Interference with Business Relationships. Finally, Defendants' motion is granted as to Count

Three as it applies to Plaintiff, Lumenforce. Lumenforce may not recover under a breach of

contract claim against Defendants Uhl, Jablonski, and Butcher.

**IT IS SO ORDERED.**

Dated: October 30, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

22